IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON RENEE HARVEY, | No. C 07-2247 SBA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| BEN CURRY, Warden, | |
| Respondent. | |

### INTRODUCTION

This matter is now before the Court for consideration of Petitioner's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2005 conviction in Santa Clara County Superior Court. Respondent Ben Curry, Warden of the California Training Facility, opposes the petition. Petitioner has filed a traverse. For the reasons discussed below, the petition is DENIED as to all claims.

### BACKGROUND

**I.  Case History**

On January 7, 2005, a jury in Santa Clara County Superior Court convicted Petitioner of: three counts of robbery, kidnaping to commit robbery, and assault with a deadly weapon (Cal. Pen.Code §§ 209, 211, 212.5, 245). The jury also found true allegations that Petitioner used a deadly weapon in the commission of two of the robberies (Cal. Pen. Code § 12022(b)(1)). The jury acquitted Petitioner of being a felon in possession of a firearm (Cal. Pen. Code § 667.5(b)), and found not true allegations that he used a firearm in the kidnaping and the third robbery. (Resp't Ex. 1 at 210-23.) On March 10, 2005, after finding that Petitioner had served a prior prison term, the trial court sentenced Petitioner to a term of seven years and four months to life in state prison. (Id. at 316-17.)

On November 14, 2006, the California Court of Appeal affirmed the judgment on all counts

in an unpublished opinion.  (Resp't. Ex. 6.)  The California Supreme Court denied a petition for review on February 7, 2007.  (Resp't Ex. 10.)

The instant petition was filed on April 24, 2007.  On May 9, 2008, Respondent was ordered to show cause.  Respondent filed an answer and memorandum of points and authorities on August 28, 2008, and lodged a number of exhibits.  Petitioner filed a traverse on August 17, 2009.

**II.** **Statement of Facts**

The following facts regarding the robbery and kidnaping of Luis Chavez are taken from the opinion of the California Court of Appeal:[1]

> On three occasions from September 17 through 25, 2004, defendant Libbett agreed to provide sexual services for men whom she and defendant Harvey robbed instead. On the first occasion at 4:30 a.m. on September 17, standing outside a blue-painted 5-unit rental property at 625 South Second Street in San Jose, where she had a room, Libbett waved down Luis Chavez who agreed to a $60 sexual dalliance. They drove to an automatic teller machine (ATM) for money first and then repaired back to Libbett's room where, after speaking to someone in a black Chevrolet Suburban that was parked nearby, she directed Chavez upstairs and into the bathroom. Libbett directed Chavez to move a chair into the bathroom and sit down, which he did. Libbett locked the door and Chavez gave her $60.
>
> Shortly thereafter, there was a knock on the door. Libbett said, "let me see who it is," and opened the door. Defendant Harvey rushed in, pointed "something" at Chavez and told him not to move, threatened to shoot him, and demanded money. Chavez was frightened, thought it "might be [his] last day," and obeyed. Libbett told Harvey to "put the gun away," and took Chavez's wallet containing $3 and his ATM card. Harvey said $3 was not enough and they would have to go to Chavez's bank and get more. Defendants escorted Chavez down the stairs and out to his car, a distance of 50 to 100 feet. Harvey told Chavez not to "try to do nothing because you are going to get hurt," and, all the way to the car, Chavez was wondering if he was going to be killed. At Harvey's direction, Chavez opened the passenger door first and Harvey got in. Chavez then went to open the driver's door. Defendants were waiting for him to drive them to the bank. Harvey told him not to run, that they would hurt him.
>
> Chavez was thinking, "what should I do now, should I run, should I wait or should I do what they are telling me to do[?] ... [T]here is a light.... Where people is [ sic ], ... and the light was red and I saw something approaching.... I was like basically praying saying like what should I do now. [¶] Then the light turned green and the driver drove by right next to the blue apartment. I took off running. So facing ... the white SUV and he said are you crazy. And I said no, I just been robbed and he stopped and said by who and I pointed at them. So they just stood there for a couple minutes I saw. They saw the driver stop,

---

[1] Petitioner's claims in the instant petition only challenge the robbery and kidnaping of Chavez. Thus the facts regarding the other counts are not included here.

they took off running."

   . . .

   Defendants were charged with the second degree robbery of Chavez
   (Pen.Code, § 211) [] with the allegation that Harvey personally used a firearm
   (§ 12022.53, subd. (b), count 1); kidnapping Chavez for purposes of robbery
   (§ 209, subd. (b)) with the personal use of a firearm by Harvey (§ 12022.53,
   subd. (b), count 2). . . .

   Defendants were found guilty as charged, with the exception that Libbett was
   not found to be armed in the commission of count 2.

People v. Harvey, No. H028565, slip op. at 1-4 (Cal. Ct. App. Nov. 14, 2006) (footnote omitted) (Resp't Ex. 6).

## DISCUSSION

**I.    Legal Standard**

    **A.    Standard of Review for State Court Decisions**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004). It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

    **1.    Section 2254(d)(1)**

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim

3

adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 409 (2000). While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

### a. Clearly Established Federal Law

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65. When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert.

denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### b. "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### c. "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard. Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging

5

the overruling of Van Tran on this point).  After Andrade,

> [t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise.  While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them.

Id.  In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result.  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

### 2. Sections 2254(d)(2), 2254(e)(1)

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record.  Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004).  A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court.  See Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004).  In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1).  Id.  First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2).  Id. at 1000.  The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings.  Id.  Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1).  Id.  According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in

federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error. See 28 U.S.C. § 2254(e)(1).  "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." Taylor, 366 F.2d at 1000.

When there is no reasoned opinion from the highest state court to consider the Petitioner's claims, the Court looks to the last reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).  Here, the California Court of Appeal was the highest state court to issue an explained opinion on Petitioner's claims.

**II.     Exhaustion**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through state collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987).  It is undisputed that Petitioner exhausted his state court remedies as to the claims raised in his petition. Specifically, Petitioner exhausted all three of his claims on direct appeal in the state courts.

**III.    Legal Claims**

Petitioner raises three claims in his petition: (1) that his conviction for kidnaping for robbery violates his right to due process under the Fifth and Fourteenth Amendments because there was insufficient evidence that the movement of Luis Chavez increased the risk of harm and that the movement was beyond that merely incidental to the commission of the robbery; (2) that the trial court violated his rights under the Fifth, Sixth and Fourteenth Amendments in upholding the kidnaping for robbery conviction on the ground that the movement was not  incidental to the robbery in the bathroom instead of determining whether the movement was incidental to the planned robbery at the bank; and (3) the California Court of Appeal violated his Fifth, Sixth and Fourteenth Amendments by making the same ruling, i.e. upholding the kidnaping for robbery conviction on the

1  ground that the movement was not incidental to the robbery in the bathroom instead of determining
2  whether the movement was incidental to the planned robbery at the bank.

### 1. Sufficiency of Evidence of Movement

Petitioner claims that his conviction of kidnaping for robbery under California Penal Code § 209(b) violates his right to due process under the Fifth and Fourteenth Amendments because there was insufficient evidence that the movement of the victim increased the risk of harm to the victim and was beyond the movement merely incidental to the commission of the robbery.

If the evidence in support of a state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt, the conviction violates due process and the state petitioner is entitled him to federal habeas relief from that conviction. Jackson v. Virginia, 443 U.S. 307, 321, 324 (1979). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. Jackson, 443 U.S. at 324.

Under California law, a life sentence with the possibility of parole is imposed upon a conviction of kidnaping for purpose of robbery only if the victim is moved "beyond that merely incidental to the commission of" the robbery, and the movement "increases the risk of harm to the victim over and above that necessarily present in the intended" robbery. Cal. Pen. Code § 209(b). (See also Resp't Ex. 6 at 7). The California Court of Appeal went on to explain California law regarding these elements as follows:

> To determine whether the movement is merely incidental to the robbery, the jury must consider not only the distance, but also the " 'scope and nature' " of the movement as well as "the context of the environment in which the movement occurred." *Rayford, supra*, 9 Cal.4th at p. 12, 36 Cal.Rptr.2d 317, 884 P.2d 1369.) The "scope and nature of the movement" includes the actual distance the victim is moved but there is no minimum number of feet a defendant must move a victim in order to satisfy this requirement. (*Ibid.*) A distance of 29 feet (*In re Amber S.* (1995) 33 Cal.App.4th 185, 39 Cal.Rptr.2d 672) has been found to be substantial movement that is not incidental to the underlying crime. The *Rayford* "standard suggests a multifaceted, qualitative evaluation rather than a simple quantitative assessment."

8

> (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152, 47 Cal.Rptr.3d 575, 140 P.3d 866.)

(Id.)  The California Court of Appeal's statement of California law is binding on this Court. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

The court proceeded to reject Petitioner's claim, based on the following reasoning:

> In the instant case, Chavez was robbed in a bathroom he voluntarily entered and then was moved outside. Ordinarily, "where a kidnapping occurs after the actual perpetration of a robbery such kidnapping may be kidnapping for the purpose of robbery if it may reasonably be inferred that the transportation of the victim was to effect the escape of the robber or to remove the victim to another place where he might less easily sound an alarm." (*People v. Monk* (1961) 56 Cal.2d 288, 295, 14 Cal.Rptr. 633, 363 P.2d 865.) In this case, after the taking was completed (and the take was disappointing-$3, a wallet, and an ATM card), defendants formed the intention of performing a second robbery at a bank ATM. The movement down the stairs, through the building, and out to Chavez's truck at the curb was for the purpose of a separate robbery, not to effectuate the initial robbery or to help the defendants escape from it. The 50 to 100 feet defendants forced Chavez to move, as he thought, at gunpoint, was "by no means an unsubstantial distance." (*People v. Jones* (1999) 75 Cal.App.4th 616, 629, 89 Cal.Rptr.2d 485.)
>
> Furthermore, forcing Chavez downstairs and into his own vehicle to drive them to a different location for the commission of another crime against him under different circumstances and at a different time and place from the first robbery subjected Chavez to an increased risk of harm. There was an increased risk of harm in moving Chavez from a private room to a public street via a public stairway in a multi-unit residential building where, at 4:30 in the morning, it was likely residents would hear any commotion or outcry if Chavez's fear of defendants goaded him into taking action and Harvey, as he promised, hurt him. Chavez was forced to move while praying for guidance about whether or not to run for his life. This situation caused "a substantial increase in the risk of psychological trauma to the victim beyond that to be expected from a stationary robbery." (*People v. Nguyen*, *supra*, 22 Cal.4th at p. 886, 95 Cal.Rptr.2d 178, 997 P.2d 493.)
>
> The further move from the relative safety of a public street with passing traffic into a private vehicle with Chavez bundled with two assailants could and did trigger a successful escape attempt, but could easily have resulted in injury to Chavez. Similar perils were possible during the intended transfer of Chavez to an ATM location at a bank in a public place which may or may not have been deserted at that hour. For example, if the defendants had been successful in forcing Chavez into the vehicle, there was a risk of an automobile accident or an injury during an escape attempt. (*In re Earley* (1975) 14 Cal.3d 122, 132, 120 Cal.Rptr. 881, 534 P.2d 721.)  "The fact that these dangers did not materialize does not, of course, mean that the risk of harm was not increased." (*Ibid.*)
>
> Defendants list a number of cases (which we will not cite because they are inapposite) where short distances were found to be insufficient to support substantial movement. Unlike this case, the movements in these cases were all incidental to the commission of the robberies for which the defendants were prosecuted. There was substantial evidence in the record in this case that the movement of Chavez from the bathroom to the car was substantial, not merely incidental to the first robbery, and substantially increased the risk of harm to Chavez.

9

(Resp't. Ex. 6 at 7-9.)

For the reasons explained by the California Court of Appeal, there was sufficient evidence that Petitioner and his the movement of Chavez increased the risk that he would be harmed and was more than necessary to carry out the robbery. When Petitioner moved Chavez out of the bathroom and into the hallways and stairway of the multi-unit residential building, and then out into the street, the circumstances became less predictable and more volatile. A witness or a law enforcement officer could have intervened on purpose or by accident. Chavez was also more likely to call for help or flee once outside, as he eventually did. Either of these developments would have made the situation more volatile and increased the risk that Petitioner would use his gun to hurt Petitioner, as Petitioner had threatened to do. Members of the public were also newly placed at risk of harm once Petitioner moved Chavez outside of Libbett's apartment.

In addition, the movement of Chavez was not simply incidental to the robbery. When they moved Chavez, Petitioner and Libbett had already robbed him of his wallet and a small amount of money in Libbett's bathroom. As the movement took place after the robbery in the bathroom, it was not merely incidental to that robbery. Even if, as Petitioner argues, the kidnaping for robbery charge was based on the intended robbery at the ATM, and not the robbery in the bathroom, the movement was not merely incidental to that robbery. To begin with, the movement of Chavez was substantial, as they moved him 50-100 feet out of the residence, down the stairs, through the building and outside to his truck. Moreover, the movement was not necessary for the ATM robbery as Petitioner and Libbett could have simply taken Chavez's ATM card, forced him to disclose his password, and then either freed him or detained him in the bathroom while they went to the ATM. By taking him with them, they had the opportunity to continue to commit further crimes against him, such as stealing his car, hurting him, as they threatened, or having him lead them to his residence or place of work to steal more things. The fact that they intended to commit a further robbery of Petitioner after moving him does not necessarily make the movement simply incidental to that robbery.

Consequently, the California Court of Appeal reasonably found that Petitioner's conviction for kidnaping Chavez was supported by sufficient evidence that the movement increased the risk of harm and was more than incidental to the underlying robbery. Accordingly, the state court's denial

of Petitioner's claim of insufficiency of evidence was neither contrary to nor an unreasonable application of federal law, and Petitioner is not entitled to habeas relief on this claim.

**2.     State Court Decisions**

Petitioner's second and third claims argue that the state trial and appellate courts, respectively, violated his Fifth and Fourteenth Amendments by upholding the kidnaping for robbery conviction on the ground that the movement was not incidental to the robbery in the bathroom instead of determining whether the movement was incidental to the planned robbery at the bank.[2] Petitioner argues that the kidnaping theory argued by the prosecutor was that Chavez was kidnaped and moved for the purpose of robbing him at the ATM, and not for the purpose of the robbery in the bathroom, and thus the movement had to be more than simply incidental to the intended ATM robbery.

To begin with, due process does not require that the evidence support a guilty verdict only on the theory offered by the prosecutor. Due process simply requires that, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. For the reasons explained above, there was sufficient evidence for a rational juror to have found beyond a reasonable doubt that the movement was not merely incidental to either the robbery in the bathroom or the intended robbery at the ATM. Accordingly, the state court's denial of Petitioner's second and third claims was neither contrary to nor an unreasonable application of federal law,[3] and Petitioner is not entitled to habeas relief on those claims.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk of the Court shall enter judgment and close the file.

No certificate of appealability is warranted in this case. See Rule 11(a) of the Rules

---

[2] Petitioner also lists the Sixth Amendment, but he does not explain, nor can the Court venture to guess, how the Sixth Amendment is implicated or what provision of the Sixth Amendment is implicated in this claim.

[3] The California Court of Appeal did not address these claims, and the California Supreme Court denied them summarily.

11

1  Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of
2  appealability in same order that denies petition).  Petitioner has failed to make a substantial showing
3  that any of his claims amounted to a denial of his constitutional rights or demonstrate that a
4  reasonable jurist would find this Court's denial of his claims debatable or wrong.  See Slack v.
5  McDaniel, 529 U.S. 473, 484 (2000).

6      IT IS SO ORDERED.

7  DATED: 5/17/10

                                          _____
8                                            SAUNDRA BROWN ARMSTRONG
                                          United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

LEON RENEE HARVEY,

        Plaintiff,

v.

BEN CURRY et al,

        Defendant.

Case Number: CV07-02247 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 21, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Leon Renee Harvey V72083
California State Prison - Solano
Bldg. 11/2334
2100 Peabody Road
P.O. Box 4000
Vacaville, CA 95696

Dated: May 21, 2010

                              Richard W. Wieking, Clerk
                              By: LISA R CLARK, Deputy Clerk

G:\PRO-SE\SBA\HC.07\Harvey2247.denyHC.wpd   13